UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 7 |
| | ) | |
| JENNIFER W. LIVERMORE, | ) | No. 12 B 30720 |
| | ) | |
| Debtor. | ) | |
| _____ | ) | |
| | ) | |
| BERGER SCHATZ, LLP, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 12 A 1689 |
| | ) | |
| JENNIFER W. LIVERMORE, | ) | |
| | ) | |
| Defendant. | ) | Judge Goldgar |

MEMORANDUM OPINION

This matter is before the court on the motion of defendant Jennifer W. Livermore

("Livermore") under Rule 12(b)(6), Fed. R. Civ. P. 12(b)(6) (made applicable by Fed. R. Bankr.

P. 7012), to dismiss the adversary complaint of plaintiff Berger Schatz, LLP ("Berger") for

failure to state a claim. The complaint asserts that Livermore owes Berger a debt

nondischargeable under section 523(a)(2)(A). For the reasons that follow, Livermore's motion

will be granted, and the complaint will be dismissed. Berger will be given leave to amend.

**1. Background**

On a motion to dismiss under Rule 12(b)(6), the court takes as true all well-pleaded

allegations in the complaint and draws all reasonable inferences in favor of the non-movant.

*Rujawitz v. Martin*, 561 F.3d 685, 688 (7th Cir. 2009). The court considers not only the facts

alleged but also facts evident from exhibits attached to the complaint. *See* Fed. R. Civ. P. 10(c) (made applicable by Fed. R. Bankr. P. 7010); *Gburek v. Litton Loan Serv. LP*, 614 F.3d 380, 384 (7th Cir. 2010). The court also considers facts asserted for the first time in the plaintiff's response to the motion if they are consistent with the complaint. *Early v. Bankers Life and Cas. Co.*, 959 F.2d 75, 79 (7th Cir. 1992).

The complaint, exhibits, and response disclose the following facts. In February 2009, Livermore hired Berger, a law firm to represent her in her divorce action in Illinois state court. The parties entered into a written "Engagement Agreement" under which Livermore agreed to pay Berger an advance retainer of $7,500 and then pay for Berger's legal services at its regular hourly rates. Berger represented Livermore in the action until June 9, 2010, when Livermore hired new counsel and Berger withdrew.

Shortly before Berger withdrew, Livermore sold her residence. According to Berger, Livermore had discussed with the firm the possibility of paying her attorney's fees from the proceeds of the sale of her residence. The sale proceeds were deposited in an escrow account at Chicago Title Insurance Company.

After Berger withdrew, the firm filed a petition to have the state court set its final fees and costs. Berger sought an order requiring Livermore to pay the $85,912.46 unpaid balance of its $124,512.46 bill. Berger also sought a "judgment" for the amount owed to be paid from Livermore's interest in the proceeds from the sale of her residence. Whether the state court granted Berger its "judgment" is unclear. What is clear is that on September 24, 2010, the court ordered Livermore to inform Berger of any motions or orders pertaining to the disbursement of funds from the escrow account.

On March 2, 2011, a judgment for dissolution of marriage was entered in the divorce

-2-

action.  Berger's fee petition was still pending.  The state court set a hearing on the fee petition

for April 11.  The court also entered an order barring Livermore from receiving any further

distributions from the escrow account at Chicago Title during the pendency of Berger's fee

petition.

On March 11, 2011, just two days after the order was entered prohibiting Livermore from

receiving funds from the escrow account, Livermore's parents, Mitchell and Helene Kamon, filed

a complaint against her in the state court.  The Kamons' complaint alleged that on April 1, 2010,

they had loaned her $75,000, and she had agreed to repay the loan (plus interest) out of the

proceeds from the sale of her residence or by payments to be made starting December 1, 2010.

The complaint also styled itself in part an "Application to Confess Judgment."

On March 14, 2011, an affidavit captioned "Affidavit of Agreement to Confess

Judgment" was filed in which Livermore attested that she acknowledged the debt, waived any

process, and consented to entry of judgment against her on the complaint.  That same day,

without notice to Berger, an agreed order (signed by Livermore) was entered granting judgment

to the Kamons against Livermore for $75,000.  Also that same day, the Kamons began efforts to

collect the judgment, having a citation to discover assets issued to Chicago Title.

Chicago Title must have answered the citation interrogatories by disclosing the funds

held in the escrow account, because on April 14, 2011, the court entered an agreed order (signed

by Livermore) in which Livermore waived any exemption in the escrowed funds and consented

to entry of a turnover order against Chicago Title.  The court also entered an order requiring the

turnover of $60,559.09 to the Kamons.  The turnover order added that "any and all funds in

excess of the amount indicated in this order are to be returned to the account holder, that the

freeze on said account is lifted, and the Citation is dismissed."

On April 26, 2011, an in-house lawyer for Chicago Title sent a letter addressed to counsel

for the Kamons, Livermore's former counsel at Berger, and others acknowledging receipt of the

turnover order. "I am now in the difficult position," he said, "of being subject to conflicting

court orders" – meaning, presumably, the turnover order and the earlier order in the divorce

action barring Livermore from receiving distributions from the escrow account. Counsel for

Chicago Title urged the parties to resolve the dispute so that Chicago Title could avoid having to

engage counsel of its own.

Nothing is alleged about events after the April 26 letter from Chicago Title. It is unclear

from the record whether Chicago Title turned over the $60,559.09, or whether the entire amount

is still in the escrow account at Chicago Title.

On August 1, 2012, Livermore filed a chapter 7 bankruptcy case. On her Schedule B,

Livermore listed a "[p]ossible interest in escrow account at Chicago Title Insurance Company"

with a balance of $60,500.09 that is "likely subject to judgment liens and turnover order."[1] In

her statement of financial affairs, Livermore disclosed the Kamons' action against her and gave

its status as "[j]udgment entered, and 3rd party turnover still pending." She also disclosed the

sale of her residence and said "net proceed[s] in escrow account pending turnover order is

$49,000." On March 21, 2013, the trustee filed an asset report listing a "[p]ossible interest in

escrow account at Chicago Tit[le]."

In November 2012, Berger filed the adversary proceeding that is the subject of the

pending motion. The complaint contains a single count alleging that Livermore owes Berger a

debt nondischargeable under section 523(a)(2)(A) of the Bankruptcy Code, which excepts from

discharge a debt "for money, property, services, or an extension, renewal, or refinancing of

---

[1]     The court can take judicial notice of matters in its own records. *In re Brent*, 458
B.R. 444, 455 n.5 (Bankr. N.D. Ill. 2011).

-4-

credit, to the extent obtained by . . . false pretenses, a false representation, or actual fraud . . . ."

11 U.S.C. § 523(a)(2)(A). Berger alleges that the promissory note to the Kamons "does not

appear to have a basis in reality," and Livermore devised a "fraudulent scheme" that provided

"insiders, [Livermore's] parents, and a close friend . . . with a secured interest in the marital

property without receiving any consideration or notifying her ex-husband or counsel." (Compl. ¶

27; Resp. at 4).

Livermore now moves to dismiss the complaint on the ground that the debt at issue was

incurred long before any alleged wrongdoing occurred. Because it was impossible for her to

obtain legal services by fraud, the complaint fails to state a claim.

## 2. Discussion

Livermore's motion will be granted. The complaint fails to state a section 523(a)(2)(A)

claim, though for reasons other than the one Livermore offers. The complaint will accordingly

be dismissed with leave to amend.

### a. Rule 12(b)(6) Standard

Under Rule 12(b)(6), a complaint will be dismissed unless it clears two hurdles. *EEOC v.

Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007). First, the complaint must

contain enough factual detail to give the defendant fair notice of the claim under Rule 8(a). "[A]

formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*,

550 U.S. 544, 555 (2007). Some facts must support each element of the claim. *Ashcroft v. Iqbal*,

556 U.S. 662, 678–79 (2009); *McCauley v. City of Chicago*, 671 F.3d 611, 616-17 (7th Cir.

2011); *Swanson v. Citibank, N.A.*, 614 F.3d 400, 405 (7th Cir. 2010).

Second, a complaint must state a plausible claim – meaning the allegations must raise the

plaintiff's right to relief above a "speculative level." *Twombly*, 550 U.S. at 555. The plausibility standard "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (internal quotation omitted). To establish plausibility, a plaintiff "must give enough details about the subject-matter of the case to present a story that holds together." *Swanson*, 614 F.3d at 404. That the allegations underlying the claim "'could be true is no longer enough to save it.'" *Estate of Miller ex rel. Bertram v. Tobiasz*, 680 F.3d 984, 989 (7th Cir. 2012) (quoting *Atkins v. City of Chicago*, 631 F.3d 823, 831 (7th Cir. 2011)).

### b. Section 523(a)(2)(A)

Berger's complaint fails to state a claim under section 523(a)(2)(A) because it fails to allege enough information to give rise to a plausible inference that Livermore owes Berger a debt resulting either from false pretenses or a false representation or from actual fraud.

Section 523(a)(2)(A) excepts from discharge any debt "for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by…false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition." Although some courts have applied a single test for determining nondischargeability under section 523(a)(2)(A), that section actually describes three separate grounds for holding a debt to be nondischargeable: false pretenses, false representation, and actual fraud. *Dishman v. Julian (In re Julian)*, Nos. 12-7394-RLM-7, 12-50275, 2013 WL 625346, at *3 (Bankr. S.D. Ind. Feb. 20, 2013); *Wachovia Sec., LLC v. Jahelka (In re Jahelka)*, 442 B.R. 663, 668 (Bankr. N.D. Ill. 2010); *Bletnitsky v. Jairath (In re Jairath)*, 259 B.R. 308, 314 (Bankr. N.D. Ill. 2001).

### i. False Pretenses and False Representation

The complaint here does not allege a claim under section 523(a)(2)(A) based on false pretenses or false representation because it alleges no actionable representation.

To state a claim for false pretenses or false representation, a creditor must allege that the debtor owes the creditor a debt resulting from a false representation or omission of fact, a representation the debtor either knew was false or made with reckless disregard for its truth. *In re Davis*, 638 F.3d 549, 553 (7th Cir. 2011); *Ojeda v. Goldberg*, 599 F.3d 712, 716-17 (7th Cir. 2010); *Wallner v. Liebl (In re Liebl)*, 434 B.R. 529, 538 (Bankr. N.D. Ill. 2010); *Jahelka*, 442 B.R. at 668-69; *Deady v. Hanson (In re Hanson)*, 432 B.R. 758, 771 (Bankr. N.D. Ill. 2010). The creditor must also allege that the debtor made the representation with an intent to deceive and the creditor justifiably relied on the representation. *Ojeda*, 599 F.3d at 716-17.

To be actionable under section 523(a)(2)(A), however, a false representation must ordinarily relate to a "present or past fact." *Santiago v. Hernandez (In re Hernandez)*, 452 B.R. 709, 723 (Bankr. N.D. Ill. 2011). A representation about an act to be performed in the future – a promise, in other words – is actionable only if the debtor made the representation with no intention of ever keeping the promise. *Perlman v. Zell*, 185 F.3d 850, 852 (7th Cir. 1999); *Chriswell v. Alomari (In re Alomari)*, 486 B.R. 904, 911-12 (Bankr. N.D. Ill. 2013); *Hernandez*, 452 B.R. at 723. Typically, then, a debtor's false contractual promise will not support a section 523(a)(2)(A) claim. *Rezin v. Barr (In re Barr)*, 194 B.R. 1009, 1017-18 (Bankr. N.D. Ill. 1996).

The complaint alleges a false promise without the requisite intent. The representations on which Berger's claim depends arise out of the firm's Engagement Agreement with Livermore. Berger alleges that Livermore "agreed to pay Berger Schatz for all of its services based on hourly rates charged by the firm" and "agreed to reimburse Berger Schatz for costs incurred in

-7-

connection with the matter." (Compl. ¶ 7). At no point, though, does Berger allege facts

suggesting that Livermore entered into the Engagement Agreement never intending to pay the

firm's fees and expenses. Berger alleges Livermore's failure to pay and adds that her consent to

the Kamons' judgment shows she "never had intention [*sic*] of paying . . . ." (Compl. ¶ 27). But

her failure to pay does not raise an inference that she never intended to pay. *See ExpressDrop,*

*Inc. v. Mateyko (In re Mateyko)*, 437 B.R. 313, 319 (Bankr. N.D. Ill. 2010). And the confession

of judgment occurred in 2010, a year after she retained Berger. Her decision to confess judgment

on the note arguably suggests that by 2010 Livermore no longer intended to pay, but it does not

support the inference that she never intended to pay when she signed the Engagement Agreement

in 2009. To raise that inference, Berger must allege more. *Iqbal*, 556 U.S. at 686-87; *see EMD*

*Crop Bioscience Inc. v. Becker Underwood, Inc.*, 750 F. Supp. 2d 1004, 1019-20 (W.D. Wis.

2010) (noting that a plaintiff must allege facts sufficient to raise a plausible inference of intent).[2]

Because Berger alleges only a false promise unsupported with any facts from which intent

can be inferred, Berger has not alleged an actionable representation. The complaint fails to state

a claim under section 523(a)(2)(A) based on false pretenses or false representation.

## ii. Actual Fraud

The complaint also fails to state a claim under section 523(a)(2)(A) based on actual fraud.

The complaint states no actual fraud claim because it alleges no debt resulting from a fraud.

To state a claim for actual fraud, the creditor must allege three elements: a fraud

---

[2]      Alleging more may be difficult. According to the fee petition Berger filed in the
state court, Livermore incurred total fees and costs of $124,512.46, of which $85,912.46
remained unpaid. Presumably, then, Livermore paid Berger $38,600. A debtor's part
performance under an agreement typically suggests the debtor had no fraudulent intent when he
entered into it. *See Lefelstein v. Donlevy (In re Donlevy)*, 342 B.R. 774, 780 (Bankr. N.D. Ill.
2006); *Bednarsz v. Brzakala (In re Brzakala)*, 305 B.R. 705, 712 n.3 (Bankr. N.D. Ill. 2004).

occurred, the debtor intended to defraud, and the fraud created the debt. *Consumers Coop.*

*Credit Union v. Munson (In re Munson)*, Nos. 10 B 1559, 10 A 218, 2010 WL 3768017, at *5

(Bankr. N.D. Ill. Sept. 17, 2010); *Liebl*, 434 B.R. at 538. Fraud in this sense consists of

essentially "any deceit, artifice, trick, or design involving direct and active operation of the mind,

used to circumvent and cheat another." *McClellan v. Cantrell*, 217 F.3d 890, 893 (7th Cir. 2000)

(internal quotation omitted). Allegations of misrepresentation and reliance are therefore

unnecessary. *Id.* at 894; *Munson*, 2010 WL 3768017, at *4; *Hanson*, 432 B.R. at 772.

As *McClellan* explains, a fraud can "create a debt" when, for example, a third party owes

a creditor money, and the debtor colludes with the third party to prevent the creditor from

collecting. *McClellan*, 217 F.3d at 895. In that situation, the original debt the third party owed

the creditor may not have been obtained by fraud, but the debtor's deceitful actions in rendering

the debt uncollectible creates a new debt by operation of law – one the debtor now owes the

creditor. *Id.* A fraud can also create a debt, *McClellan* says, when the third party renders his

own debt uncollectible through an actually fraudulent conveyance of collateral securing the debt.

*Id.* Then, too, the fraudulent conveyance creates a "new debt" resulting from the fraud although

the original debt the third party owed the creditor was not obtained by fraud. *Id.*

Here, Berger alleges only a slight variation on the *McClellan* theme. Whatever the nature

of Livermore's original debt under the Engagement Agreement, Berger asserts (though not in so

many words) that a new debt arose, one created by fraud, when Livermore (1) signed a bogus

promissory note in favor of the Kamons, (2) confessed judgment in the action the Kamons filed

against her to collect on the note, and (3) consented to the turnover order against Chicago Title

when the Kamons enforced their citation to discover assets. Service of the citation would have

the effect of encumbering the funds in the Chicago Title escrow account, giving the Kamons an

-9-

interest superior to Berger's interest. *See* 735 ILCS 5/2-1402(m) (2010). Turnover of the funds

in the escrow account would render uncollectible, at least from that account, the original debt

Livermore owed Berger.

The problem with the theory that the turnover order rendered the debt uncollectible is that

Berger does not allege the funds in the escrow account were ever actually turned over. The body

of the complaint contains no such allegation. The last word on the subject in the exhibits to the

complaint is the letter in which Chicago Title's in-house counsel simply noted the conflicting

orders to which Chicago Title was subject and urged the parties to resolve the matter. There are

indications elsewhere in the record, meanwhile, that perhaps the funds are still in the account.

Livermore's schedules and statement of financial affairs, both signed under oath, assert a

potential interest in the escrow account and state that the turnover order remains "pending." The

trustee's asset report likewise mentions a possible interest in the escrow account.

The problem with the theory that Livermore might have engineered a citation lien to

prime Berger's unsecured interest in the funds is that it is unclear whether the lien still existed on

the bankruptcy petition date. A citation lien does not last forever. The lien is perfected on the

date the citation is served, *Cacok v. Covington*, 111 F.3d 52, 54 (7th Cir. 1997), but a citation

"terminates automatically" six months after the respondent's first appearance unless extended by

court order, Ill. Sup. Ct. R. 277(f), and the lien terminates with it, *Cacok*, 111 F.3d at 54. The

complaint does not allege that the citation was extended and was still in effect when Livermore

filed bankruptcy. To the contrary, the citation called for an appearance or answer on April 13,

2011, and the April 14 turnover order suggests there was an appearance, answer, or both that day.

If so, and the citation was not extended, the proceeding terminated in October 2011. In fact, it

may well have terminated sooner: the turnover order declares that the "[c]itation is dismissed."

-10-

Section 523(a)(2)(A) does not except from discharge every debt somehow connected with a fraud. *One–On–One Fitness Personal Training Serv., Inc. v. Reyes (In re Reyes)*, Nos. 09 B 35198, 09 A 1277, 2010 WL 2757180, at *3 (Bankr. N.D. Ill. July 13, 2010). As *McClellan* makes clear, *see McClellan*, 217 F.3d at 895, that section excepts only debts for money, property, services, or an extension, renewal, or refinancing of credit "to the extent obtained" by fraud, 11 U.S.C. § 523(a)(2). Section 523(a)(2)(A) does not exist to punish deceitfulness from which nothing is gained. Without some allegation that Livermore's allegedly fraudulent collusion with the Kamons resulted in their obtaining either the funds in the escrow account or at least an interest in the funds superior to Berger's interest, the complaint states no claim for actual fraud.

Because Berger has not alleged a debt created by fraud, Berger has not alleged actual fraud. The complaint no more states a section 523(a)(2)(A) claim based on actual fraud than it does based on false pretenses or false representation.

### 3. Conclusion

For these reasons, the motion of defendant Jennifer W. Livermore to dismiss the complaint of Berger Schatz, LLP is granted. The complaint is dismissed. Berger Schatz, LLP will be given leave to amend. A separate order will be entered in accordance with this opinion.

Dated: April 3, 2013

_____
A. Benjamin Goldgar
United States Bankruptcy Judge

-11-